UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESI CARDENAS, | Case No.: 1:11-cv-01394 - JLT (PC) |
| Plaintiff, | ORDER DISMISSING THE COMPLAINT WITH LEAVE TO AMEND |
| v. | |
| TULARE COUNTY SHERIFF'S DEPT., et al. | (Doc. 7) |
| Defendants. | |

Plaintiff Desi Cardenas, III, ("Plaintiff") is a pre-trial detainee[1] proceeding *pro se* and *in forma pauperis* in a civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 4 and 7). Plaintiff consented to the jurisdiction of the Magistrate Judge on August 30, 2011. (Doc. 5). On April 12, 2013, Plaintiff submitted his first amended complaint against the Tulare County Sheriff's Department ("Department"), Lieutenant ("Lt.") Fosnaugh, and Sergeant ("Sgt.") Maldonado seeking monetary and declaratory relief. (Doc. 7 at 1, 9-10). As required, the Court screens the first amended complaint, and for the reasons set forth below, the Court **ORDERS** that the first amended complaint be **DISMISSED** with **a <u>final</u> opportunity to amend his complaint.**

///

---

[1] Plaintiff alleges for the first time in his amended complaint that he is a pre-trial detainee and not a convicted inmate. *Compare* (Doc. 1) with (Doc. 7)

1

**I.   Screening Requirement**

Because Plaintiff seeks redress from governmental employees in a civil action, the Court is required to screen his complaint in order to identify any cognizable claims. 28 U.S.C. § 1915A(a)-(b). The Court shall "dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

**II.   PLEADING STANDARDS**

  **A. Fed. R. Civ. P. 8(a)**

"Pro se documents are to be liberally construed" and "'must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). "[They] can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain: (1) a short and plaint statement of the grounds for the court's jurisdiction, . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a). Each allegation must be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1). While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citations omitted).

In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts all non-conclusory factual allegations as true, and determines whether those non-conclusory factual allegations accepted as true state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 676-684 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." (Id. at 678) (internal quotation marks and citation omitted). In determining plausibility, the Court is permitted "to draw on

its judicial experience and common sense." Id. at 679.

**B. 42 U.S.C. § 1983**

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See* Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation of which the plaintiff complains. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981) (*quoting* Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)).  42 U.S.C. § 1983 does not create substantive rights, but rather services as a vehicle to protect federal rights which have been established elsewhere. Graham v. Connor, 490 U.S. 386, 393-394 (1989).

**III.    PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff identifies himself as a "Northern Hispanic" gang member and is incarcerated at the Bob Wiley Detention Center ("Bob Wiley"). (Doc. 7 at 2).  From May 26, 2010, until August 20, 2010, he was housed in the "Casa"[2] where allegedly "Northern Hispanic" gang members subjected him to a hazing procedure. Id. at 2-4.  Gang members forced him to disclose personal information, searched him, and made him sit or stand at attention against his will, resulting in a loss of his daily recreational activities. Id. at 3-4.  Similarly, Plaintiff could not shower or cut his hair without permission from the gang members during this time. Id.

Plaintiff never reported this conduct to prison officials because he was afraid to do so. Id. at 4. Nonetheless, in August of 2010, Plaintiff's girlfriend contacted Bob Wiley officials and notified them that something was wrong with Plaintiff. Id. at 4.  At the same time, it appears the gang members completed their hazing process and accepted Plaintiff. Id. at 5.

On December 13, 2010, Lt. Fosnaugh and Sgt. Maldonado discovered that Plaintiff intended to

---

[2] The term "Casa" is vernacular for General Population Unit 42 ("Unit 42") controlled by a notorious group of "Northern Hispanic" gang members and is the only location available for "Northern Hispanic" gang members at Bob Wiley other than protective custody. (Doc. 7 at 2).

3

testify against Inmate Florez. <u>Id</u>. at 5.  Plaintiff was then placed in a cell adjacent to Inmate Florez to "collect 'information' that could be used on the stand." <u>Id</u>.  Plaintiff was placed in a different cell on December 14, 2010, where he remained until March 2, 2011. <u>Id</u>. at 6.  During the same time, Plaintiff alleges that Stg. Maldonado taunted Plaintiff for three days by occasionally walking past his cell and winking at him. <u>Id</u>. at 6.

On March 1, 2011, an unnamed deputy informed Plaintiff that he was to testify against Inmate Florez the following day. <u>Id</u>. at 6.  Sgt. Maldonado then placed Joseph Florez in the cell adjacent to Plaintiff's. <u>Id</u>. at 6.  Inmate Florez told Plaintiff that he was not "going to do anything to [Plaintiff] yet," but he harassed Plaintiff all night. <u>Id</u>.  Plaintiff feared that a deputy would open their cells and enable Inmate Florez to attack Plaintiff. <u>Id</u>. at 6-7. Plaintiff claims mental and emotional injuries. <u>Id</u>. at 8.

**III.   DISCUSSION AND ANALYSIS**

    **A.  Eighth and Fourteenth Amendment Claims.**

The Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, entitles a pretrial detainee to be free from cruel and unusual punishment. <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998)(applying Eighth Amendment standards to a civil detainee's Fourteenth Amendment claim of cruel and unusual punishment; <u>Schwartz v. Lassen Cnty. ex rel. Lassen Cnty. Jail (Det. Facility)</u>, 838 F. Supp. 2d 1045, 1052 (E.D. Cal. 2012).  Given the similarities between the two Amendments, the Ninth Circuit applies Eighth Amendment standards to a pretrial detainees' Fourteenth Amendment claims of cruel and unusual punishment. <u>Frost</u>, 152 F.3d at 1128; *see also* <u>Irby v. Skagit Cnty. Jail</u>, 344 F. App'x 371 (9th Cir. 2009).

To demonstrate that conditions of confinement arose to the level of cruel and unusual punishment, a civil detainee must demonstrate that: (1) prison officials caused an objectively "sufficiently serious deprivation" and (2) the prison official acted with "deliberate indifference" towards the civil detainee's health or safety. *See* <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).  The first element is satisfied where a state actor denies a civil detainee his or her "minimal civilized measure of life's necessities." *See* <u>Farmer</u>, 511 U.S. at 834.

In essence, Plaintiff seeks recompense from the three Defendants for the emotional injuries

4

sustained while incarcerated at Bob Wiley and the Main Jail. He alleges that his injuries were caused by the gang-related hazing activities, by a deprivation of basic human needs and by verbal harassment. Each claim is addressed below.

### i.  **Emotional injuries under 42 U.S.C. § 1997e(e)**

An inmate asserting a civil rights action based on mental or emotional damages must first demonstrate that he or she sustained physical injury while in custody. 42 U.S.C. § 1997e(e)[3] *amended by*, Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-12, 127 Stat. 54. The Ninth Circuit requires a demonstration of more than a *de minimis* physical injury to satisfy the "physical injury" element. Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).[4] While an inmate need not show a significant injury, the failure to establish more than a *de minimis* injury is fatal to an action brought under 42 U.S.C. § 1983. *Compare* Pierce v. Cnty. of Orange, 526 F.3d 1190, 1224 (9th Cir. 2008) ("physical injury" was shown where an inmate developed a bladder infection and bed shores after prison officials refused to provide for his medical needs) *and* Monclova-Chavez v. McEachern, Case Number 1:08-CV-00076-AWI, 2011 WL 976476, at * 5-6 (E.D. Cal. 2011) (an inmate's significant bruising and weakness caused by prison official was more than *de minimis*, even though it did not necessitate medical treatment) *with* Oliver, 289 F.3d 623 (§ 1997e(e) barred recovery where an inmate sustained the *de minimis* injuries of minor back pain and a canker sore).

Plaintiff fails to indicate that he sustained *any* physical injury. Plaintiff's "fear for his safety" at the hands of the "Northern Hispanic" gang members and Inmate Florez establishes nothing more than mental and emotional damages. Despite the Court's sympathy for his circumstances, Plaintiff's classification as gang member carries with it the inherent risk of fear and abuse for which the Court can offer no remedy. Furthermore, Plaintiff indicates that the treatment he received from the gang

---

[3] The 42 U.S.C. § 1997e(e) standards discussed apply equally to pretrial detainees and convicted inmates. *Compare* Oliver, 289 F.3d 623 *with* Williams v. Flint, Case Number CIV S-06-1238-FCD-GGH-P, 2008 WL 4736651, at * 6-7 (E.D. Cal. 2008).

[4] An exception to this rule exists where a "plaintiff has actionable claims premised on constitutional violations, and not on a claim of mental or emotional injury, [then such] constitutional claims are not barred by § 1997e(e)." Low v. Stanton, Case No. CIV S052211MCE DADP, 2010 WL 684969, at * 4 (E.D. Cal. Feb. 23, 2010)(*citing* Oliver, 289 F.3d at 630). For example, a plaintiff seeking damages for a Fourteenth Amendment violation not based on emotional injuries may seek recovery for that claim. Oliver, 289 F.3d at 630. However, as all of Plaintiff's claims are premised on mental or emotional injuries, this exception does not apply.

1 members was avoidable by electing to enter protective custody. (Doc. 7 at 2-3).  Plaintiff declined to
2 do so due to the social stigma associated with protective custody. Id.

3       In regard to Defendant Maldonado's placement of Plaintiff in the cell adjacent to Joseph
4 Florez, Plaintiff's fear that his cell door would open is completely unfounded.  Plaintiff provides no
5 factual basis to support this belief, and more importantly, the door was never opened.  Thus, Plaintiff
6 fails to show any objective deprivation needed to establish a cognizable Fourteenth Amendment claim
7 of cruel unusual punishment.  Thus, the amended complaint is **DISMISSED with leave to amend**.

8       ii.    **Deprivation of Basic Human Needs by the Department and Lt. Fosnaugh.**
9       a.    Objective Deprivation.

10       While outdoor exercise is clearly established as a basic human need, the Ninth Circuit has
11 declined to find that a denial of outdoor recreation constitutes a *per se* deprivation under the Eighth
12 Amendment. *See* Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979). Rather, courts engage in a
13 factual inquiry to determine whether an alleged denial of outdoor recreation constitutes an objective
14 deprivation. *Compare* Spain, 600 F.2d 189 (denial of outdoor recreation to segregated prisoners for a
15 number of years was cruel and unusual) *and* Allen v. Sakai, 48 F.3d 1082 (9th Cir. 1994) (complete
16 denial of six-and-one half weeks of access to outdoor recreation stated a constitutional violation) *with*
17 LeMaire v. Maass, 12 F.3d 1444, 1458 (1993) (nine-month denial of outdoor exercise when inmate
18 posed a grave security risk was not a violation of the Eighth Amendment).  Furthermore, the Ninth
19 Circuit has expressly determined that "a temporary denial of outdoor exercise with no medical effects
20 is not a substantial deprivation." Norwood v. Vance, 591 F.3d 1062, 1070 (9th Cir. 2010).

21       Similarly, the right to sanitation has been established as a basic human need. *See* Johnson v.
22 Lewis, 217 F.3d 726, 731 (9th Cir. 2000)(*citing* Farmer, 511 U.S. 832).  Courts must consider the
23 "circumstances, nature, and duration of a deprivation of [the] necessities" when considering whether a
24 deprivation arose to an Eighth Amendment violation. Johnson, 217 F.3d at 731.  The Court recognizes
25 that denial of showers may be grounds for an Eighth Amendment violation, but inmates are not
26 guaranteed access to a daily shower. Gonzales v. Price, Case No. 1:07-CV-01391-AWI-SMS(PC),
27 2009 WL 4718850, at * 5 (E.D. Cal. 2009) (25 days of denial of showers over a two year period,
28 where Plaintiff had access to a shower at least every three days, was not an Eighth Amendment

violation).

Here, Plaintiff alleges that he could not take a shower without permission by the other gang members for the approximate three month period in which Plaintiff felt he was being hazed. (Doc. 7 at 4). Plaintiff fails to provide any factual support as to whether he actually was unable to shower, how many times this occurred and over what period of time this occurred.

Likewise, there is no factual support for the proposition Defendants were aware of a "kangaroo court"[5] operating in the housing unit or that Defendant did not voluntarily refuse yard time and daily showers. The mere fact there were cameras in the housing unit does not demonstrate deliberate indifference to Plaintiff's safety, without factual support for the conclusion that watching the cameras would have yielded unequivocal information of the hazing activities, rather than depicting what may have appeared to be Plaintiff choosing to act consistently with his companions.

b. Deliberate Indifference.

As noted above, Plaintiff must establish that Defendants acted with deliberate indifference. Farmer, 511 U.S. at 834. A showing of deliberate indifference occurs where a prison official "knows of and disregards an excessive risk to inmate health and safety." Id. at 837. In other words, a prison official must be cognizant of "facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Assuming *arguendo* that a deprivation of outdoor recreation and showering occurred, Plaintiff fails to provide any facts to indicate that Lt. Fosnaugh or the Department were aware of Plaintiff's situation. The fact Sgt. Cherobiaz asked Plaintiff whether he was ready to be "cleared by the Casa," (Doc. 7 at 2), gives credence to the proposition that *some* prison officials were aware that gang hazing occurred in Unit 42. However, it is insufficient to state a claim against the Department and Lt. Fosnaugh. Moreover, Plaintiff fails to provide any factual support to demonstrate that specific prison

---

[5] Plaintiff also alleges that Defendants should be liable because the "kangaroo court" subjected him to "unreasonable searches and seizures" in violation of the Fourth Amendment. (Doc. 7 at 8). However, once again, it was the inmates, not Defendants, who subjected him to search and seizure and there is no factual support that Defendants should have been objectively aware of the fact that Plaintiff objected to sharing his legal documents with the others. Thus, this claim is **DISMISSED.**

7

1  officials were aware of his deprivations and failed to assist him.[6]  Therefore, the complaint is
2  **DISMISSED with leave to amend.**

3           iii.    **Sgt. Maldonado's Harassment.**

4  The claim that Sgt. Maldonado taunted and derided by winking at Plaintiff is most analogous
5  to an Eighth Amendment claim of verbal harassment. As a general rule, such harassment does not
6  arise to an Eighth Amendment violation. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)(claim
7  that prison guards used "disrespectful language" was not a constitutional violation).  In analyzing a
8  claim of verbal harassment, the Ninth Circuit looked to see whether the alleged comments were "gross
9  even for a prison setting and were calculated to and did cause [the plaintiff] psychological damage.
10  Keenan v. Hall, 83 F.3d at 1092.  Here, Sgt. Maldonado's wink can be interpreted as innocuous at
11  best.  While the gesture may have caused Plaintiff to feel "very uncomfortable," (Doc. 7 at 6), a claim
12  that Plaintiff lost his "peace of mind" is not a cognizable claim under the Eighth Amendment. Keenan,
13  83 F.3d at 1092.  Thus, the claim against Defendant Maldonado is **DISMISSED with leave to amend**.

14      **B.  Sixth Amendment Claim**.

15  Plaintiff's allegation that Defendants Fosnaugh and Maldonado intentionally transferred
16  Plaintiff to the cell adjacent to Inmate Florez for the purpose of making Plaintiff a "jailhouse
17  informant," (Doc. 5 at 11), necessitates a Sixth Amendment analysis.[7]  The deliberate placement of a
18  "jailhouse informant" in a situation that is likely to elicit incriminating statements from an accused
19  about a crime charged without the presence of the accused's attorney violates the *accused's* Sixth
20  Amendment right to counsel. U.S. v. Henry, 447 U.S. 264, 266-267, 270, 274 (1980).  In matters
21  where the Sixth Amendment has been violated, it is the accused − not the jailhouse informant − who
22  possesses the right to seek relief under the Sixth Amendment. *See e.g.,* Henry, 477 U.S. 264 (The
23  accused alleged violation of right to counsel when paid informant actively engaged in conversation

---

[6] Should Plaintiff elect to file a second amended complaint, he must name the prison officials he believes who deliberately failed to protect him as defendants.

[7] The Court notes the difference between the original and amended complaint in regard to the alleged purpose that Plaintiff was placed next to Inmate Florez for on December 13, 2010. *Compare* (Doc. 1 at 4) and (Doc. 7 at 5).  Plaintiff previously alleged that he was placed next to Inmate Florez as punishment for refusing to testify against him. (Doc. 1 at 4).  It is now indicated that he was placed next to Inmate Florez to "collect information." (Doc. 7 at 5).  If Plaintiff believes that by changing his reasoning he thereby changes the Court's opinion of his ability to state a claim, he is mistaken.

1 about the crime charged) *and* Kuhlmann v. Wilson, 477 U.S. 436 (The accused sought relief from
2 admission of unsolicited statements made to a "jailhouse informant").

3 Here, Plaintiff claims prison officials attempt to make him a "jailhouse informant." (Doc. 7 at 5). The Court can find no legal authority, and Plaintiff does not provide any, to support some type of Sixth Amendment right that was violated by placing Plaintiff next to Inmate Florez to collect information. The fact Lt. Fosnaught and Sgt. Maldonado may have lied about their reasoning for placing him next to Inmate Florez on December 13, 2010, does not arise to any constitutional violation. Thus, Plaintiff fails to state a cognizable Sixth Amendment claim against Defendants. As there are no grounds on which Plaintiff can reassert his unenumerated Sixth Amendment claim, the claim is **DISMISSED.**

  C. **Liability of the Department and Lt. Fosnaugh**

Plaintiff appears to assert again liability against Lt. Fosnaugh and the Department for the actions of their subordinates. *Compare* (Doc. 1) *with* (Doc. 7). Plaintiff was previously advised that he could not maintain his claim against Defendant Fosnaugh on the theory of *respondeat superior* and that he must "demonstrate that each defendant personally participated in the deprivation of his rights." (Doc. 6 at 6) (*citing* Jones v. Williams*,* 297 F.3d 930, 934 (9th Cir.2002)).

Plaintiff was previously advised that a municipality, such as the Department, may be liable under 42 U.S.C. § if "a deliberate policy, custom, or practice that was the "moving force" behind the [alleged] constitutional violation[.]" (Doc. 6 at 3)(*quoting* Galen v. County of Los Angeles, 477 F.3d 652, 667 (9th Cir. 2007). However, unless Plaintiff suffered a constitutional violation, there can be no liability imposed on the Department even if it maintained unconstitutional policies or customs. Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994)(*holding* that a claim against a municipality is properly dismissed where there is no showing of any underlying constitutional violation). Even assuming the Department has a custom of ignoring inmates undergoing the hazing process, (Doc. 7 at 8-9), Plaintiff has not shown that the Department ignored *a known risk of harm to the Plaintiff.* Farmer, 511 U.S. at 833. Thus, the failure to state a constitutional claim precludes a finding that the Department may be held liable.

Likewise, liability may be imposed on a supervisor when the individual "participated in or directed the violations, or knew of the violations and failed to act to prevent them." (Doc. 6 at 6) (*quoting* Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989)).  Assuming that a deprivation had occurred, Plaintiff asserts liability against Lt. Fosnaugh on the basis that he was aware of the "method and motive of the Northern Hispanic structure within Unit 42." (Doc. 7 at 2-3).  Plaintiff further avers that Fosnaugh was aware of the "kangaroo court's" control over Plaintiff because "all of the events described [in the complaint] were on video surveillance" and "[j]ail staff supervise all inmate activity." (Doc. 7 at 4, 5).  These statements assume that Fosnaugh watched the cameras or that merely watching would have apprized him that Plaintiff objected to the other inmate's actions and was a victim of the hazing process.

Seemingly, Plaintiff believes he can impose liability on Defendants even though he was a gang member—which resulted in his placement with other members of the gang--and then, when he objected to the gang's conduct, not only did he choose not to bring his specific situation to the attention of prison officials but he also refused to enter protective custody which would have removed him from this circumstance.  The suggestion that Defendants must have known he was being hazed—because there were cameras in the housing units—is a mere conclusion which, as noted above, fails to have adequate factual support.  Even if the Court presumes Defendants watched the camera throughout the time Plaintiff was housed at the jail and saw the events described by Plaintiff, it appears that Plaintiff never objected to the treatment by the other inmates such that a Defendant observing the events through the camera would have been alerted to any wrongdoing.  Moreover, the fact that on one occasion, an officer made inmates step away from Plaintiff does not demonstrate that the named Defendants were aware of the hazing.

Finally, Plaintiff avers that Fosnaugh failed to act when Plaintiff's girlfriend "reported that something was wrong with Plaintiff" in August of 2010. (Doc. 7 at 8).  There are no facts to indicate the complaint was made to Fosnaugh or that he had any awareness of the complaint.  Moreover, even if the girlfriend made the complaint directly to Fosnaugh, she reported only that she thought "there was something wrong with Plaintiff." Generally, a person in jail has a myriad of problems most notably, *that he is in jail*.  This generalized concern would not have placed Fosnaugh on notice that

Plaintiff was in fear for his safety. Moreover, the suggestion that Plaintiff would have reported the conduct of the other inmates if he was asked is belied by his refusal to risk being placed in protective custody and his unequivocal unwillingness to seek the assistance of the jail personnel.

More importantly, Plaintiff admits that beginning in August of 2010, he no longer feared for his safety. (Doc. 7 at 5). Thus, by the time the girlfriend's concern was expressed, there was nothing for Fosnaugh to investigate or discover. Thus, Plaintiff again fails to provide any factual basis on which the Court can find Lt. Fosnaugh, by reason of his own actions, deprived Plaintiff of *any* constitutional right. Thus, the amended complaint is **DISMISSED.**

## V.   LEAVE TO AMEND

The Court will provide Plaintiff one **final** opportunity to amend his pleading to cure the deficiencies noted in this order.[8] See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987) ("A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quotations omitted). In his second amended complaint, **Plaintiff must address the deficiencies noted here. Plaintiff is advised that his failure to do so will result in an order dismissing this action.**

In addition, Plaintiff is cautioned that in his amended complaint he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff is also advised that once he files his second amended complaint, his original pleadings are superceded and no longer serve any function in the case. *See* Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Thus, the second amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 220. "All causes of action alleged in an original complaint which are not [re-]alleged in an amended complaint are waived." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted).

**ORDER**

Accordingly, and for the foregoing reasons, IT IS HEREBY ORDERED that

1.   The first amended complaint is **DISMISSED with 21 days leave to amend;**

---

[8] Plaintiff is advised that his inability to state a constitutional violation does not mean he is precluded from filing complaint in the county Superior Court based upon violations of state law.

2. Plaintiff is advised the second amended complaint must bear the docket number assigned to this case and must be labeled "Second Amended Complaint";

3. The Clerk of the Court is **DIRECTED** to send Plaintiff the form complaint for use in a civil rights action; and

4. **Plaintiff is firmly cautioned that failure to comply with this order will result in an order dismissing this action.**

IT IS SO ORDERED.

Dated: **May 15, 2013**                    **/s/ Jennifer L. Thurston**
                                           UNITED STATES MAGISTRATE JUDGE